IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

UNITED STATES OF AMERICA §
§
v. § CRIMINAL NO. G-03-011
§ (Civil Action No. G-07-0278)
ANDREW HARTSHORN, JR. §

## MEMORANDUM AND ORDER

Defendant Andrew Hartshorn, Jr., filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("Motion") [Crim. Doc. # 75], to which his defense attorney filed a Sealed Affidavit in Response [Crim. Doc. # 79] and the United States filed a Response [Crim. Doc. # 85]. The Court has carefully reviewed the full record in this criminal case.[1] Based on this review and the application of governing legal authorities, the Court **denies** the Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Hartshorn was charged in a two-count indictment in September 2003 with transportation of child pornography and possession of child pornography, both after having been convicted of a sex-related offense. Defense counsel, Assistant Federal

---

[1]    The criminal case was assigned to Judge Sam Kent in the Galveston Division. Judge Kent accepted Defendant's plea of guilty, entered before the Magistrate Judge, and sentenced Defendant. Defendant's § 2255 Motion was later transferred to the undersigned.

Public Defender Omar Johansson, requested and obtained time to have a psychiatrist advise him regarding Hartshorn's sanity and competency.

When the psychiatric evaluation was completed and defense counsel was satisfied that Hartshorn was both sane and competent, counsel filed a motion challenging the enhancement allegations in the indictment, arguing that Hartshorn's prior state felony convictions for indecent exposure involving a minor were improperly characterized in the indictment as "abusive sexual conduct" instead of the proper characterization as "sexual abuse of a minor."  The United States superceded the original indictment in April 2004, correcting the enhancement language and adding six additional counts.  The parties and the court agreed that the superseding indictment rendered moot the motion challenging the enhancement language in the original indictment.

In June 2004, Hartshorn entered a plea of guilty before Magistrate Judge John Froeschner[2] to two counts of distribution of child pornography.  Because Johansson had left the Federal Public Defender's office to enter private practice, Defendant was represented at the rearraignment proceeding by Assistant Federal Public Defender Tom Berg.  The plea was entered pursuant to a written Plea Agreement.  *See* Crim. Doc.

---

[2]      Defendant and his attorney executed a Consent to Administration of Guilty Plea and Federal Rule of Criminal Procedure 11 Allocution by United States Magistrate Judge. *See* Crim. Doc. # 29.

# 31.  In the Plea Agreement, Defendant waived his rights to appeal and to challenge his conviction or sentence collaterally under § 2255 or any other post-conviction proceeding.  *See id.*, ¶ 21.  Defendant reserved the right, however, to appeal a sentence that exceeded the statutory maximum or that included an upward departure from the Sentencing Guidelines.  *See id.*, ¶ 22.

Judge Froeschner found that Hartshorn was entering "knowing and voluntary pleas" to Counts 2 and 3 of the Superseding Indictment and recommended that Judge Kent accept the guilty plea.  *See* Report and Recommendation [Crim. Doc. # 32].  No objections to the Report and Recommendation were filed.  Judge Kent, having given the matter *de novo* review, found that Hartshorn's pleas of guilty were knowing and voluntary, that Hartshorn understood the nature of the charges against him and the consequences of his pleas, and that there was a factual basis for each element of the charged offenses.  *See* Order Accepting Guilty Plea [Crim. Doc. # 35], p. 2.  Based on these findings, Judge Kent accepted Hartshorn's guilty pleas to Counts 2 and 3 of the Superseding Indictment and adjudged him guilty of those two offenses.  *See id.*

Sentencing was scheduled for September 3, 2004, but Defendant requested and was granted a sixty-day continuance in order to evaluate fully Defendant's mental health records.  Defendant filed objections to the Presentence Report ("PSR"), challenging the 5-level enhancement for having "engaged in a pattern of activity

involving the sexual abuse or exploitation of a minor." *See* Defendant's Objections to PSR [Crim. Doc. # 39], ¶ 2.  The United States responded to Defendant's objections and requested an upward departure based on Defendant's "extensive and persistent criminal conduct involving the sexual abuse of minors."  *See* Crim. Doc. # 40, § III.

Defendant was sentenced in November 2004.  Judge Kent, applying the United States Sentencing Guidelines, determined Defendant's guideline range to be 292-365 months.  Judge Kent denied the government's request for an upward departure on the term of imprisonment, and sentenced Defendant to 365 months in the custody of the Bureau of Prisons.  Judge Kent, however, imposed an upward departure to a life term of supervised release.

Defendant filed a Notice of Appeal.  In the appeal, Defendant was represented by Assistant Federal Public Defender Molly Odom.  Defendant asserted a challenge to his sentence pursuant to *United States v. Booker*, 543 U.S. 220 (2005).  Defendant also challenged the conditions of his supervised release that (1) he not be released to the Southern District of Texas or to the residence of his biological family; (2) that he cooperate in the collection of a DNA sample; and (3) that he not possess sexually oriented or sexually stimulating materials.  The United States Court of Appeals for the Fifth Circuit held that Hartshorn's *Booker* challenge was subject to the appeal waiver in the Plea Agreement.  *See United States v. Hartshorn*, 163 F. App'x. 325, 329 (5th

Cir.), *cert. denied*, __ U.S. __, 126 S. Ct. 2313 (2006).  Because all parties agreed that the condition regarding geographic limitations on Defendant's supervised release were beyond Judge Kent's statutory authority, the Fifth Circuit held that the issue was within Defendant's reservation of appeal rights.  The Fifth Circuit concluded, however, that the geographic limitation was merely a recommendation rather than a requirement and, therefore, was not appealable.  *See id.* at 330.  The Fifth Circuit determined that consideration of Defendant's challenges to the conditions regarding the DNA sample and the possession of sexually oriented materials was barred by the appeal waiver in the Plea Agreement.  *See id.* at 330-31.  As a result, the Fifth Circuit affirmed Defendant's conviction and sentence.

Hartshorn now seeks relief from his conviction and sentence under 28 U.S.C. § 2255.  Hartshorn complains that he was denied effective assistance of counsel, that his conviction was based on a "coerced confession," and that his guilty plea was not knowing and voluntary.  For reasons discussed more fully below, Hartshorn is not entitled to the relief he seeks.

## II.   DISCUSSION

### A.   Hartshorn Has Waived Collateral Review

The Court notes initially that, pursuant to the written plea agreement in this case, Hartshorn waived the right to appeal or to otherwise challenge his conviction and

sentence collaterally under 28 U.S.C. § 2255.[3]  By signing that agreement, Hartshorn expressly gave up the right to contest or collaterally attack his conviction or sentence under 28 U.S.C. § 2255.  It is well settled that an informed and voluntary waiver of post-conviction relief under 28 U.S.C. § 2255 "is effective to bar such relief."  *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).  An ineffective assistance of counsel claim can survive a waiver of collateral attack only when the alleged ineffectiveness directly affected the waiver or the plea itself.  *See United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002).

Hartshorn asserts that his plea was not knowing and voluntary but, as is discussed in more detail below, that assertion is clearly refuted by the record.  The Fifth Circuit found that "there is no indication in the record [that Hartshorn's] ratification of the plea agreement was anything but knowing and voluntary."  *See Hartshorn*, 163 Fed. Appx. at 328.   Hartshorn does not otherwise allege any facts that cast doubt on the validity of the waiver of collateral review found in the written plea agreement.  Indeed, while under oath during the guilty plea proceeding, Defendant answered "yes" when asked if he understood all the terms of the plea agreement.  *See* Rearraignment

---

[3]      Defendant waived his right of appeal and his right to challenge his conviction and sentence pursuant to § 2255 or any other post-conviction proceeding.  *See* Plea Agreement, ¶ 21. Defendant reserved his right to *appeal* a sentence that was above the statutory maximum or that included an upward departure.  Defendant did not, however, reserve the right to challenge collaterally an illegal or upward departure sentence.  *See id.,* ¶ 22.

Transcript ("Trans.") [Crim. Doc. # 62], p. 23.  The Magistrate Judge explained that, in addition to giving up the right to appeal his sentence except on two limited issues, Hartshorn was giving up "the right to try to attack your sentence" in any other way, and Hartshorn told the Magistrate Judge that he understood.  *See id.* at 38-39.

The Court concludes that Hartshorn's Motion is foreclosed by the waiver of collateral review contained in the written plea agreement.  Alternatively, to the extent that his claims are not waived, Hartshorn's arguments are without merit for reasons discussed below.

### B.    Standard for § 2255 Relief

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.*  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.

*See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

Defendant is proceeding *pro se* in this matter. *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972). At the same time, however, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## C.   Ineffective Assistance of Counsel Claim

To prevail on a § 2255 claim of ineffective assistance of counsel, a defendant must demonstrate both constitutionally-deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a

defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005), *cert. denied*, 547 U.S. 1041 (2006). Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429 F.3d at 518 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir.) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 546 U.S. 919 (2005). Defendant has failed to show either deficient performance or prejudice.

Defendant asserts that his counsel at the district court level provided ineffective assistance by failing to object to the enhancement, failing to explain that Hartshorn could receive a lifetime of supervised release, failing to request a continuance of the rearraignment proceeding, and failing to meet with Defendant and explain matters sufficiently.  Defendant also asserts that his appellate counsel was constitutionally ineffective for failing to appeal his "lifetime supervised release."

At the time of his guilty plea before Judge Froeschner, Hartshorn was placed under oath.  *See* Rearraignment Transcript ("Trans.") [Crim. Doc. # 62], p. 3.  When asked if Berg had explained things to him and that Berg's answers to questions made sense, Hartshorn answered "yes."  *See id.* at 7-8.  He advised the Court that he had been given a copy of the indictment "quite a while ago" and that he had a chance to read it and discuss it with counsel.  *See id.* at 9.  Hartshorn told the Magistrate Judge that Berg was "okay" and had "done everything."  *See id.* at 10.  When asked if there was anything else counsel should have done to investigate the case, Hartshorn answered "no."  *See id.*  Each time he was asked whether counsel had answered any questions he had about the facts of the case or the law that applied, Hartshorn answered "yes."  *See id.* at 10, 30.  He agreed that Berg had talked with him about the Sentencing Guidelines, and that Berg had answered the "most part" of his questions but some

questions "just simply can't be answered at this point in time." *See id.* at 11.  He stated

unequivocally that he had "no complaints" about defense counsel.  *See id.* at 12.

The record refutes Defendant's assertion that his attorney failed to object to the

enhancement.  Indeed, Johansson filed a written motion objecting to the enhancement

language and Berg filed a written objection to use of the enhancement.  Defendant told

the Magistrate Judge during the rearraignment proceeding that he understood "about

how they're trying to use [the prior conviction] as an enhancement" and Judge

Froeschner explained again that Judge Kent could use the prior convictions as an

enhancement and that the punishment range would increase "over and above what it

otherwise would be." *See* Trans., p. 27.

The record also establishes that Defendant's allegation that he did not understand

that he could be sentenced to a life term of supervised release is without merit.  During

the guilty plea proceeding, the Magistrate Judge explained clearly that Judge Kent

could sentence Defendant to "supervised release for any period of time up to the entire

remainder of [his] life" and Hartshorn stated that he understood.  *See* Trans., p. 28.

When asked if he had any questions about the possible sentences, Hartshorn answered

"no" and stated "I understand." *See id.* at 31-32.

Defendant complains that Berg failed to request a continuance of the guilty plea

proceeding, but provides no basis for Berg to request such a continuance.  Moreover,

under oath during the guilty plea proceeding, Hartshorn advised Judge Froeschner that

he had discussed the charges, the consequences, and the plea agreement with counsel

who had answered all his questions.  Defendant has not shown that failure to ask for

a continuance was deficient performance by counsel.

Defendant states that his attorney failed to meet with him and discuss matters

with him adequately.  The uncontroverted[4] record establishes that defense counsel

repeatedly met with Defendant for substantial periods of time.  Indeed, the record

reflects that defense counsel worked on Hartshorn's case in excess of 100 hours at the

trial court level.  Defendant stated under oath that his attorney had discussed the facts

and applicable law with him, had answered his questions, and that he had no

complaints about his attorney.  To the extent counsel's explanations were in any way

unclear or inadequate, the Magistrate Judge explained the potential for a life term of

supervised release, the possibility and effect of sentencing enhancements, and the Plea

Agreement provision waiving collateral attack.  Defendant has failed to establish

deficient performance or prejudice and, therefore, is not entitled to relief under § 2255.

---

[4]     In his response to Berg's affidavit, Defendant states that he does not remember Berg spending
2.8 hours with him on June 3, 2004.  *See* Response [Crim. Doc. # 81], ¶ 2.  The time records
attached to Berg's affidavit, however, indicate that Berg met with Hartshorn for only 2.3
hours on June 3, 2004, but spent an additional .5 hour reviewing the proposed plea
agreement.  *See* Time Records attached to Berg Affidavit, p. 5.

### D.     "Coerced Confession" Claim

Hartshorn claims that his "conviction [was] obtained by use of coerced confession."  *See* Motion, p. 6 "Ground Two."  In the section for "supporting facts," Defendant wrote "see attached please."  In the attachment "facts for Ground two," Hartshorn did not mention a confession, coerced or otherwise.  Instead, he wrote that he "took the plea agreement" because his defense counsel wanted him to and because the "D.A. would make [him] look real bad" at trial.

Any challenge to a "coerced confession" is waived by entry of a guilty plea.  *See United States v. Williams*, 61 F. App'x. 120 (5th Cir. 2003) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Smallwood,* 920 F.2d 1231, 1240 (5th Cir.1991)).  Moreover, even if not waived, the record does not contain any indication that a "confession" Defendant may have given was the basis for his prosecution or conviction.  Defendant is not entitled to § 2255 relief on his claim regarding a "coerced confession."

### E.     Plea Was Not Knowing and Voluntary

Defendant states in his Motion as Ground Three that his guilty plea was "unlawfully induced or not made voluntarily; or with understanding of the nature of the charge and the consequences of the plea."  *See* Motion, p. 7.  As the facts supporting his claim, Defendant states that his attorney did not discuss the plea agreement with

him, that he did not understand that he could be sentenced to a life term of supervised release, and that he did not understand about the use of enhancements. *See id.* at 14.

As was discussed more fully above, Defendant was placed under oath at the beginning of the rearraignment proceeding. Defendant stated under oath that he had reviewed the indictment and that Berg had answered all his questions about the charges and the consequences of pleading guilty. The Magistrate Judge explained clearly and accurately the possibility of a life term of supervised release and the possible use and effect of an enhancement based on Defendant's prior convictions. The record clearly refutes Defendant's assertion that his guilty plea was not knowing and voluntary.

Additionally, the record establishes that Berg advised the Court that he believed, based on the psychiatric evaluation, that Hartshorn was mentally competent. *See* Trans., p. 7. In response to questions from the Magistrate Judge and from counsel, Hartshorn stated that he believed he was competent and understood what was happening. *See id.* He stated that he fully understood the nature of the charges against him. *See id.* at 9. When asked at least twice if Berg or Johansson had done anything to force him to plead guilty against his will, Hartshorn answered "no" each time. *See id.* at 11, 24. When asked if he was "pleading guilty freely and voluntarily," Hartshorn answered under oath "yes." *See id.* at 52. Based on Hartshorn's sworn answers during the guilty plea proceeding, the Magistrate Judge found that Hartshorn was "fully

competent and capable of entering informed pleas," was "aware of the nature of the charges" against him and the consequences of entering guilty pleas, and that Hartshorn's guilty pleas were "knowing and voluntary pleas" that were supported by an independent factual basis.

Based on the full record in this case, the Court concludes without reservation that Hartshorn's guilty pleas to Counts 2 and 3 of the Superseding Indictment were informed, knowing, and voluntary.  Defendant is not entitled to relief under § 2255 on this claim.

### F.    Appellate Counsel's Failure to Appeal Supervised Release Term

Defendant asserts and the record confirms that appellate counsel did not appeal the upward departure length of Defendant's term of supervised release.  The record does not, however, provide a legal or factual basis to challenge on appeal the life term of supervised release.  An upward departure to a more lengthy term of supervised release is permissible where there exist aggravating circumstances not fully considered in the Sentencing Guidelines.  *See* 18 U.S.C. § 3553(b).

In this case, Defendant has a history extending over more than twenty years of engaging in sexual misconduct – predominantly exposure – involving minors. Defendant stated that he had not yet succeeded in his attempts to lure children to enter his home for sexual activity, but he characterized that failure as unfortunate.  The child

pornography in his possession and which he distributed was extensive and contained graphic depictions of sexual violence involving children.  One of the computer files contained a video of a male penetrating a three-year-old child in restraints, while another contained photos of a girl approximately five years old crying while being sexually assaulted by an adult male.  It is clear that these aggravating circumstances, specifically Defendant's lengthy history and his view that his inability to entice children into his home for sexual contact was unfortunate, warrant an upward departure as to the term of supervised release.  It is unlikely that, if raised as an issue on appeal, the Fifth Circuit would have reversed Judge Kent's decision that Hartshorn needed supervision for the remainder of his life in order to protect the children residing or attending school near him.  Defendant is not entitled to § 2255 relief based on this claim.

## III.   **CERTIFICATE OF APPEALABILITY**

Defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253.  Thus, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).

"This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898

(5th Cir. 2000).   After carefully considering the entire record of this criminal proceeding, the Court concludes that jurists of reason would not debate whether the movant has stated a valid claim or whether the Court's ruling regarding Defendant's waiver of collateral attack in this case was correct.   Accordingly, a certificate of appealability will not issue.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The defendant's § 2255 motion (Crim. Doc. # 75) is **DENIED** and the corresponding civil action (G-07-0278) is **DISMISSED** with prejudice.

2.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum and Order to the parties and will file a copy in Civil Action No. G-07-0278.

SIGNED at Houston, Texas, this 19th day of **November, 2007**.


Nancy F. Atlas
United States District Judge